BRANT, Plaintiff in Error, *vs.* ROBERTSON, Defendant in Error.

1. Under the new code, where a case has been tried by the court below, without a jury, and the finding of facts is incomplete on its face, the case will be reversed.

2. No conveyance can be a mortgage, unless it is made to secure the payment of a debt, or the performance of a duty, either existing at the time the conveyance is made, or to be created or to arise in the future.

3. To determine whether a transaction was a conditional sale or a mortgage, courts will look, not only to the deeds and writings, but to all the circumstances of the contract, to

ascertain the real intention of the parties. If the intention is doubtful, it will be held as mortgage, as this construction is more just and equitable.

4. Under the 5th clause of the 14th section, of the act concerning executions, (R. S. 1845,) where A. has agreed to convey land to B., and B. has agreed to pay for it, or has paid for it in whole or in part, B. has such an interest in the land as may be sold on execution.

*Aliter*, If B. has paid no money and is under no obligation to pay.

### *Error to St. Louis Circuit Court.*

The opinion of the court contains a sufficient statement of the facts.

*T. T. Gantt*, for plaintiff in error.

I. Robertson, at the time of the sale by the sheriff, being in possession of the premises under a contract of sale, had a legal interest therein, saleable on execution. Rev. Code of 1845, sections 2 and 66 of ch. 61, p. 475, 488. *Benton* v. *Mullanply's* Exr. 8 Mo. R. 650.

Such an interest is saleable on execution, even in those states in which a merely equitable estate cannot be sold by the sheriff. *Jackson* v. *Parker*, 9 Com. 73. *Jackson* v. *Scott*, 18 Johns. 94. A mere equitable estate not being at that time saleable on execution in New York. 5 Cow. 485. *Jackson* v. *Chapin*.

II. This possession of the defendant in error, thus being a legal estate, all equitable interests belonging to him, or accruing to him from any source, were united to and merged in it: and all his estate, legal and equitable, passed by the sheriff's deed. *Goodright* v. *Wells*, Douglas' Reports, 741. Rev. Code of 1845, p. 475, 488. 8 Mo. Rep. 650. Burton on Real Property, 426.

III. Under our laws, all interest and title in and to real estate, is saleable on execution. The second section of an act concerning executions, approved February 1, 1839, (September acts of 1839, p. 43,) defines "real estate" to signify "all interest of the defendant, or any one to his use, held or claimed by virtue of any deed, bond, covenant, or other writing for a conveyance or as a mortgagor or mortgagee in fee, for life, or years."

The act of 1845 says more concisely, but not less comprehensively, that the term "real estate" shall be construed to include "all interest and estate in lands, tenements and hereditaments." Rev. Code, section 66, page 488, chap. 61. The words "estate and interest," and still more, "*all* estate and interest," are the most comprehensive known to the law. (1. Inst. 345.  A. 6 Cru. Digest, 230, sec. 24.)  If Robertson, then, had any interest or estate in the land, under the contract, legal or equitable, it passed by the sheriff's deed to Brant : and so passing, it operated as a relesse of the covenant, or a discharge of it.  1 Cruise's Digest, 457. *Wright* v. *Shales*, 2 Wilson's Rep. 329.  Burton on Real Property, 426.

IV.  Robertson had an equitable interest and estate in the land, by virtue of the contract of conditional sale. Story's Equity, 23.  Atkinson on Titles, 32–33.  Burton on Real Property, 487–488.

Even before election made by the covenantee to complete a contract of purchase, which he alone can enforce, the interest which he has by virtue of the contract, is treated in equity as "real estate."  Atkinson on Titles, p. 41–42.  14 Ves. 590. *Townley* v. *Bidwell*.  But as before stated it must, if it be real estate in this sense, have passed by the deed of the sheriff to Brant.  8 Mo. Rep. *McNair* v. *O'Fallon*, 188:  8 Mo. Rep. *Benton* v. *Mullanphy's* Exr. 651.  Rev. Code of 1845, p. 488.

V.  It was said, in the argument of the question before the Circuit Court, that until election made and tender of the price, Robertson's interest in the land was a mere *chose in action*. So in one sense, is the right of action for covenant broken, even when the covenant will be specifically performed by a court of equity.  If the covenantee goes to a court of law, nothing but his right to damages is recognized.  Thus his rights there are a mere "chose in action."  But if he resorts to a court of equity for specific performance, that court recognizes his *equitable* title to the thing contracted for, and compels the

HARVARD LAW SCHOOL LIBRARY

covenantor to convey to him the legal title, also. Atkinson on Titles, p. 33 and following. 2 Story on Equity, p. 23 and following.

*F. M. Haight*, for same.

The advance of money by Brant to Ford, and the conveyance by Robertson to Brant, and the defeasance executed by Brant, created a mortgage. The principle is undoubted, that wherever the real object of the transaction is security for money to be returned or paid, a mortgage is created, no matter what may be the form of the papers, or with what words the parties may seek to disguise the transaction.

Courts of equity lean against construing instruments to be conditional sales, and the burden of proof is on the grantors to show that a conveyance is so. If it be doubtful, it is held to be a mortgage. *Flagg* v. *Mann*, 2 Sumner, 486. *Desloge & Rozier* v. *Ranger*, 1 Mo. Rep. 327. *Crane* v. *Bonnell*, 1 Green, Ch. R. 264. *Robertson* v. *Campbell*, 2 Call. 421. 3 Green Ch. R. 370. *King* v. *Newman*, 2 Munf. 4. *French* v. *Lyon*, 2 Root, 69.

In the following cases it has been held that where there is an absolute conveyance and an agreement to re-convey, on payment of the purchase money, the transaction was a mortgage. 17 Ohio, 256. 6 Barr (Pa.,) 390. 18 Pick. 299. 1 Met. 117–119. 6 Dana, 473. 15 John. 205.

An absolute deed, with a separate defeasance, constitutes a mortgage. 7 Watts and Serg. 335. 10 Ohio, 433.

And this though the parties had no intention of making a mortgage. *Colwell* v. *Woods*, 3 Watts, 188. 4 Pick. 349. 2 Mass. 493.

Cites further. *Johnston* v. *Gray*, 16 Serg. and Rawle, 361. 5 Binney, 499. 3 J. J. Marsh. 353. 3 Blackf. 51. *Hammond* v. *Hopkins*, 3 Yerg. 525. 4 Munf. 140. *Wells* v. *Brockway*, 1 Paige C. R. 617. 19 Conn. 29.

It is said there are certain indications or ear marks which distinguish a conditional sale from a mortgage, and in this case, the indicia of a mortgage are wanting.

The cases cited show that there are no necessary or indispensable circumstances by which the nature of the transaction is invariably held to be one or the other. It is a question of intention and each case must depend on its own peculiar circumstances. In this case, the circumstances furnish evidence of the intention to create a mortgage.

In any view of the case, Robertson had an interest in the land which was saleable under execution. He was in possession under a lease and holding a contract for the purchase. His possession was as tenant and also as owner. Cites, 3 John. Ch. Rep. 312. 6 do. 398.

*Todd & Krum,* for defendant in error.

The case is not properly saved for review in this court.

The transaction between the parties, in respect to the premises in question, was a conditional sale, and the plaintiff having tendered the amount of money specified in the covenant, is entitled to a decree for a specific performance.

This case comes clearly within the principle stated in 2 Edwards' Ch. Rep. 138 ; because,

1. The covenant itself contains nothing to make the transaction a mortgage.

2. The price was fixed.

3. No disparity was shown between the money advanced by Brant and the value of the premises.

4. The relation of debtor and creditor between Robertson and Brant was not shown.

5. Brown's acts, such as making leases, receiving rents, &c., show that he regarded the transaction as a *sale* and not a mortgage.

Cite further to same point. 7 Cranch, 218. 14 Pick. 467. 2 Yerg. 6. 1 Pow. on Mort. 137. 7 Mo. 327. 1 Wash. Rep. 125.

The sale under the execution, and the sheriff's deed to Brant, did not defeat Robertson's right to pay or tender the money and claim a deed from Brant under his covenant. His interest under the covenant was not saleable on

execution, either at common law or by the statute of this state.

It is a well settled principle of the common law that no property, but that to which the debtor has a *legal title*, is liable to be taken on execution.   8 East. 467.   6 Barb. Rep. 116.   1 John. Ch. Rep. 52.   17 J. R. 354.   5 Bos. and Pul. 461. 1 Vesey Jr. 431.   13 Pet. 294, 301.

It is equally well settled that a *chose in action* cannot be levied on under a writ of *fieri facias*, and Robertson's interest under the agreement is a pure *chose in action*.   13 Pet. 294.

· The 5th subdivision of section 14 of the act to regulate executions, p. 478, Rev. Stat. 1845, does not comprehend within its provisions such a right or interest as Robertson had, under the covenant in question, at the time of the execution sale, because,

1.   Brant was not seized of the premises in question *to the use* of Robertson, for the latter had not as yet paid anything.

2.   Robertson was in possession under a lease from Brant, and not under the covenant.

Statutes containing similar provisions have been adopted in several of the states, and the courts have given them judicial construction.   13 Peters, 294.   5 S. and M. 130.   7 S. and M. 111, 630, 651.   1 Verm. 411.   1 Conn. 226.   Sug. on Ven. 337.

The statute of Missouri does not change the common law in respect to the sale of a *chose in action* under a *fi. fa.*, and Robertson's interest under the covenant was a mere *chose in action*.   Our statute was designed to subject to sale on execution, the real estate or hereditaments of a person having the entire interest therein, but which was nominally vested in another.   Brant was not seized of the premises in question to the use of, or in trust for Robertson, at the time of the execution sale.   4 J. R. 96.   17 J. R. 351–354, and cases there cited.

We concede that if Brant had instituted ejectment after his

purchase under the execution, but before tender of the money under the covenant, he could have ejected Robertson and thus acquired his possession. The latter, in an ejectment suit, would be estopped from denying Brant's right to the possession of the premises under his purchase at sheriff's sale; but such purchase did not have the effect to cancel Brown's covenant. The case of *Jackson* v. *Scott*, 18 J. R. 94, illustrates this position fully.

The same facts reported in 7 J. R. 356, were reviewed in *Bogart* v. *Perry*, 1 John. Ch. Rep. 52, where further illustrations were given by the Chancellor, which show, that upon the facts in this case, Robertson's right was but a mere *chose in action* and not subject to execution. Of course, his right under the covenant is spoken of, and not his possessory right under the lease from Brant.

The case of *Jackson* v. *Parker*, 9 Cow. 73, relied on by plaintiff in error, was a suit in *ejectment*, and while the law of that case is not controverted, it is denied that it is applicable to this. On the contrary, the court in that case lays down the very rule here contended for: for in speaking of the *lien* of the judgment, and of the defendant's interest, the court says: "*there must be either an interest known and recognized at law, or an equitable title within the purview of the statute of uses.*"

If this court holds that, upon the facts in this case, the relation of *mortgagor* and *mortgagee* existed between the parties, and that Robertson is entitled to redeem, then it is submitted that he is entitled to have credit for the rents paid Brant. This court may correct the judgment of the Circuit Court in this particular, and render such a decree as the Circuit Court should have rendered.

The appellant should not have been allowed the amount paid by him. Such payments were not necessary to protect his rights, and he occupies the position of a volunteer. At all events, whatever he did enures to the benefit of Robertson.   4

Kent, 66, (3d ed.) Tuck. notes, 157, 426. 2 Story Eq. 285. 2 John. Ch. R. 30.

GAMBLE, Judge, delivered the opinion of the court.

Robertson was the owner of a lot in St. Louis, which was subject to an incumbrance, to secure to John Ford the payment of notes which Robertson had given to Ford for the purchase money of the lot, Robertson having bought the lot from Ford. The purchase money having become payable and Robertson having failed to pay, Ford caused the property to be advertised for sale under his deed of trust. On the 8th February, 1848, Robertson, being unable to pay the money, made an arrangement with the defendant Brant for the payment of the debt to Ford. As the transaction between Robertson and Brant is in a great measure to bear the character it receives from the papers executed by the parties, it is proper to state their contents fully. Robertson, on the day mentioned, executed a deed, by which he conveyed to Brant the property in question, using the words " grant, bargain, and sell," with the effect which they have under our statute. At the conclusion of the deed, is this sentence : " It is hereby witnessed, that there is an incumbrance already on said real estate in favor of John Ford, created by deed of trust, dated April 1, 1847, recorded in Book I, No. 4, page 59, and following." On the same day with this conveyance, and evidently as a part of the arrangement, Brant executed a covenant to Robertson, in these words :

" Whereas, Thomas B. Robertson did, by deed, bearing date April 1, 1847, recorded in Book I, No. 4, p. 59, convey to the trustees of John Ford, a lot of ground or parcel of land, in the city of St. Louis, fronting on Fifth street, fifty-seven feet, and running back westwardly one hundred and thirty-feet, on which is situated the " Laclede Saloon," and whereas, at the same time, said Robertson executed to said John Ford his promissory notes for the principal sum of six thousand dollars and interest, which were secured to be paid by said trust deed :

and whereas, one of the principal notes, for the sum of two thousand dollars, became due on the 10th day of January, 1848, and was unpaid, by reason whereof the whole of said principal money and interest, up to the time of foreclosing said deed of trust, became due and demandable by said John Ford ; and whereas, by virtue of said deed of trust, said John Ford had caused said lot of ground and premises to be advertised for sale on the 7th day of February, 1848; and whereas, at the request of said Thomas B. Robertson, Joshua B. Brant, of St. Louis, in the State of Missouri, did agree to purchase the said premises from the said Robertson, and to take to himself an assignment of said notes, secured by said deed of trust; and therefore, to give the said Robertson an opportunity of redeeming the same, at any time within three years from the date hereof. Now, therefore, this agreement witnesseth, that the said Joshua B. Brant, in consideration of the premises, doth covenant with said Thomas B. Robertson, as follows : If said Thomas B. Robertson shall, within three years from the date hereof, pay to the said Joshua B. Brant the sum of six thousand two hundred and four 45-100 dollars, then and in that case, said Joshua B. Brant will convey to him, said Robertson, the said lot of ground and parcel of land, by a good and sufficient deed. But if said Thomas B. Robertson should fail to pay said sum of money to said Joshua B. Brant, within said term of three years herefrom, then this covenant is to be absolutely void at law and in equity.

" It is further agreed, that this covenant is not assignable, either in law or in equity, and that it is only binding on J. B. Brant, in favor of said Robertson and his right heirs, and not enforcible against said Brant, at the suit of any creditors of said Thomas B. Robertson, or any person other than said Robertson, claiming the benefits of the same. In other words, it is a covenant binding on the said Joshua B. Brant, in favor of the said *Thomas B. Robertson* and his right heirs, only, and not capable of being made the foundation of any action whatever, at law or equity, in favor of any third person.

In witness whereof, said parties have hereto set their hands and affixed their seals, the 8th day of February, 1848, at St. Louis, Missouri.

J. B. BRANT, [SEAL.]

THOS. B. ROBERTSON, [SEAL.]"

On the same 8th of February, Brant made a lease to Robertson for the premises, for the term of three years, at a rent of $660 per annum. The property was afterwards, during the lease and before Robertson had tendered any money to Brant to redeem the property, sold under judgment and execution against Robertson, and Brant became the purchaser. After the purchase at sheriff's sale, the parties seem to have regarded the first lease as terminated, and on the 22d December, 1848, Brant executed to Robertson a new lease for two years, at a rent of $900, the rent payable monthly. Within the three years from the making of Brant's covenant, and after the sheriff's sale, Robertson tendered to Brant the amount of money, upon the payment of which the lot was to be conveyed to Robertson, and Brant refused to accept the payment or make a deed to Robertson.

This suit is brought by Robertson, to enforce the specific execution of Brant's covenant. Brant, in his answer, alleges that the transaction between him and Robertson was a loan of money by him, and a mortgage to him by Robertson, to secure the money lent, and that the defeasance was, at the request of Robertson, executed upon a separate paper. He then insists upon his purchase of Robertson's interest or equity of redemption at sheriff's sale, as a bar to the relief sought.

On the part of Robertson, it is insisted that the transaction was a conditional sale, and that the right to redeem, which Robertson had under Brant's covenant to reconvey, was not vendible under execution, and that consequently Brant, by his purchase at sheriff's sale, did not change the relations of the ties, or divest Robertson of his right to purchase the property, upon the terms stated in the covenant.

The court has been greatly embarrassed in this case, in

determining upon what facts the judgment of the court below is to be considered as based. The finding of the facts by the court is more meagre than it should have been, when it is apparent that the principal evidence in the case was documentary, and that the parties admitted the facts not shown by the exhibits. To give an instance of this: it appears upon the transcript, by an agreement of counsel, that at the time of executing the different instruments, dated on the 8th of February, 1848, Robertson gave no note or obligation to Brant, for the payment of the money advanced by him, as mentioned in the covenant; yet, the finding of the court does not determine this question of fact, one way or the other. Again, the parties agreed that the exhibits filed by them, respectively, should be read in evidence, without proof of execution, and a bill of exceptions contained in the transcript shows that two leases made by Brant to Robertson, one on the 8th of February, and the other after his purchase at the sheriff's sale of Robertson's interest, were in evidence ; and yet, the finding of the court mentions only one lease, and, by its language, conveys the impression that Robertson continued in possession under that lease until June, 1850. Again, the covenant of Brant, which is also executed by Robertson and is the very foundation of this action, and which is sufficiently found by the court, as an instrument ascertaining the rights of the plaintiff, recites, that "Brant, at the request of Robertson, agreed to purchase the premises from Robertson, and to take to himself an assignment of the notes, secured by the deed of trust to Ford." Yet, the court, in finding the consideration of the deed from Robertson to Brant, finds it to be, " the payment and satisfaction by Brant of a debt of that amount, due from Robertson to one John Ford, the payment of which had been secured by a deed of trust," &c. It will be seen, at a glance, that it is a fact of the first importance, in determining the real nature of this transaction and the intention of the parties, whether Brant, under the agreement, held the notes given by Robertson to Ford, by an assignment of them to him by Ford, or whether he simply paid

the money to Ford, as an extinguishment of Robertson's indebtedness.

1. It has been held by this court, that in a case where the trial below has been by the court, and the facts have been found by the court, the errors to be examined here, are confined to the decision of the court upon the facts found, unless a review has been sought in the court below, upon a specific question of law or fact, and a case made as provided in the 3d sec. of article 15 of the Code of Practice.

It has also been held, that where the court has determined the issues, by a general finding in favor of either party, and no exception is taken to that mode of determining the facts, the judgment will not be disturbed in this court, either because of the failure to find the facts, or because of any legal opinions expressed by the court in the old mode of raising questions of law by instructions.

The present is a case in which the intention of the parties, and the nature of the transaction between them, must be determined, not merely by the words of the instruments they executed, but by all the circumstances attending the transaction. It is not now a question requiring any elaborate review of authorities, that a deed absolute upon its own face may be shown to be a mortgage, and it is a principle as certainly and clearly established, that where a defeasance, or other instrument of writing, is executed at the same time with the absolute deed, by which the grantor in the deed has rights secured to him, in relation to the property, courts will look into the whole transaction and all the circumstances, to ascertain the intention of the parties. The authorities abundantly prove, that upon the question, whether the instruments thus executed constitute a conditional sale or a mortgage, the preceding relations of the parties, the value of the property, and all circumstances attending the agreement, are to be taken into consideration.

In the present case, the agreement between Brant and Robertson, executed at the same time with the deed to Brant, in all probability was made after the money had been received by

Ford; for the instrument, although dated on the 8th of February, recites the fact that the property was advertised for sale on the 7th of that month. Now, if Brant, at the time of the execution of these different instruments, was actually the holder of the notes of Robertson, by assignment from Ford, he was then, in form and substance, a creditor of Robertson; and one fact which is considered by courts, as tending to show the nature of the transaction, and to give it the character of a mortgage, would be thus made apparent. On the other hand, the finding of the court is, "that the consideration of the deed from Robertson to Brant, was the payment and satisfaction by Brant, of a debt of that amount due from Robertson to one John Ford." Whether this finding means, strictly, the extinguishment of the notes, so that they no longer were evidence of indebtedness by Robertson to any person, or whether, when taken in connexion with the recital in the agreement, it means, that the debt as a debt due to Ford was satisfied by Brant, by his paying the amount to Ford and taking an assignment of the notes, is not entirely clear.

Again, the real question is, whether Robertson was debtor to Brant when the conveyance was made, and this might be the fact, although the notes of Robertson to Ford were extinguished —for if, in reality, the parties agreed expressly that the money paid by Brant to Ford should stand and be regarded as money paid and expended for Robertson, which Robertson was to repay and to be personally bound to repay, then he would be the debtor of Brant, notwithstanding the notes were satisfied and discharged. Now, in this condition of uncertainty, as to the real meaning of the finding of the court, it may be, that great injustice would be done to the parties, if we assume, either that Brant was the holder of the notes given by Robertson to Ford, by an assignment from Ford, or that the finding of the court absolutely imports that the notes and debt were extinguished, and that Robertson was not the debtor of Brant.

In the argument of this case great stress has been placed on the recitals in the agreement, and upon the language used

by the court in its finding. Yet, the matter of fact, whether the notes to Ford were extinguished and not assigned to Brant, or whether Robertson agreed to be personally bound to repay Brant, is susceptible of easy proof, and of very concise and clear statement. In the working of the new system of practice, it would be but perpetrating injustice under the forms of law, if we should allow a case like the present to be determined finally, upon a finding which leaves one of the main points in dispute not clearly ascertained. With entire consistency with the decisions heretofore made, we can regard this finding of the court as a finding of the facts, upon its own face incomplete, and therefore, requiring that the court below shall hear it anew. The recital being, " that Brant had agreed to take to himself an assignment of the notes," is not conclusive that they were assigned to him. The finding " that the consideration of the deed to Brant was the payment and satisfaction of the debt to Ford," is not conclusive that the notes were not assigned to Brant, nor is it conclusive that Robertson was not bound to pay Brant for the amount, as advanced at his request. It is desired that the fact be precisely found and stated.

It might be sufficient for the present disposition of this case, that it be sent back for a farther hearing, but the principal points in the cause have been elaborately and ably argued, and it may be useful, as well to the parties as to the Circuit Court, that our views upon the points discussed be briefly stated.

When the various decisions, involving the difference between mortgages and conditional sales, are examined, it will appear, that the person who, under the pressure of immediate and unavoidable necessity, has apparently parted with his property to the man of money, is generally the party who claims for the transaction the character of a mortgage ; while the opposite party, who has, in his own abundance and the necessities of his neighbor, the means of driving a good bargain, claims that the transaction was a conditional sale, and that only by a strict literal fulfilment of the conditions, can his bargain be wrested

from him. In the present case, as the interest of a mortgage can be sold under execution by our law, and as Brant claims to have thus purchased Robertson's interest, the parties change places, and Brant insists that the transaction was a mortgage, while Robertson maintains that it was a conditional sale, and that under such sale Brant acquired nothing, because he had no interest vendible upon execution. This question in the case is to be determined upon the facts, as they existed on the 8th of February, 1848, without regard to what has subsequently occurred. If it was then a sale upon condition, it was so throughout the whole time the parties were acting in relation to it, and if it was then a mortgage, it so continued until the equity of Robertson was extinguished, if it has been extinguished at all.

2. In determining whether the transaction was a conditional sale or mortgage, the first fact to be ascertained is, whether the relation of debtor and creditor existed previous to, or was created at, the time of the conveyance. It may be taken as universally true in law, that no conveyance can be a mortgage, unless it is made for the purpose of securing the payment of a debt, or the performance of a duty, either existing at the time the conveyance is made, or to be created, or to arise in the future. If the payment of money is the object of the security or conveyance, then there must exist a duty to pay the money. Not that it is necessary that the duty should be evidenced by a bond, or covenant, or note, or other security. A mortgage may as well be given, to secure the payment of a loan, where the whole evidence of the debt rests in the memory of witnesses, as if it could be shown by the most solemn instrument. So, an absolute deed may be shown to be a mortgage, by showing that it was made as a security for the debt or the performance of the duty, whatever may be the evidence of the debt or duty. Mr. Justice Story, in *Flagg* v. *Mann and others*, 2 Sumner, 533, says : " It has been said, that the true test whether the conveyance in this case was a mortgage or not, is to ascertain whether it was a security for the payment of any money or not. I agree to that ; and, indeed, in

all cases, the true test, whether a mortgage or not, is, to as-certain whether the conveyance is a security for the perform-ance or non-performance of any act or thing. If the trans-action resolve itself into a security, whatever may be its form, it is, in equity, a mortgage. If it be not a security, then it may be a conditional or an absolute sale." The case, which the learned Judge was considering, was one in which Walker and Fisher, the grantees, paid for Richardson (the grantor in the deed,) a debt, due from Richardson to Bennett, which was an incumbrance on the premises. conveyed to Walker and Fisher. It was the question before the court, whether the conveyance was a mortgage. The Judge proceeds : " It is said, that here there was no loan made, or intended to be made, by Walker and Fisher to Richardson ; and that they refused to make any loan. There is no magic in words. It is true that they re-fused to make a loan to him in money. But they did not refuse to pay for him the amount due to Bennett, and to take the premises as their security for reimbursement within five years.

" It is said, that there is no covenant on the part of Rich-ardson to repay the money, which should be paid by Walker and Fisher, to discharge the incumbrances on the premises. But that is by no means necessary, in order to constitute a mort-gage, or make the grantor liable for the money. The absence of such a covenant may, in some cases, where the transaction assumes the form of a conditional sale, be important, to ascer-tain whether the transaction be a mortgage or not ; but, of itself it is not decisive. The true question is, whether there is a debt still subsisting between the parties, capable of being enforced in any way, *in rem, or in personem*." The learned Judge, after referring to some authorities, proceeds : " Now, it seems to me clear, upon admitted principles of law, that, on the payment by Walker and Fisher to Bennett, of the money due from Richardson to Bennett, Richardson became the debtor of Walker and Fisher for that amount, as it was paid at his request and for his benefit." The language of the Judge, in this case, is quoted, not because there is any novelty in the

principles he declares, but because there is a clear enunciation of several principles in a short compass. In that case, the decision of the court was, that the conveyance from Richardson to Walker and Fisher was a mortgage. The Supreme Court of Massachusetts deciding upon the same conveyance, in *Flagg* v. *Mann*, 14 Pick. 467, held it a conditional sale and not a mortgage.

3. There cannot be stated any rules, by which all transactions like the present can be tested, and their true character determined; and, probably it is safer, that in contests which arise between wealth on the one side and necessity on the other, courts should be left free to decide cases according to their own circumstances. In all cases the real meaning and intention of the parties determine the character of the transaction. Every man is as much at liberty to make a conditional sale of his property, as a mortgage of it, and courts cannot do violence to the real contract of the parties, when ascertained. Where there is no allegation of fraud, or of other facts, upon which equity grants relief against the apparent obligation of contracts: where the intention of the parties is doubtful, and the court is to determine whether the transaction is a mortgage or conditional sale, it will be held a mortgage, as that construction is the more just and equitable. In order to ascertain the intention of the parties, the court will look not only to the deeds and writings, but to all the circumstances of the contract. *Prince* v. *Bearden*, 1 A. K. Marsh. 170. *Oldham* v. *Halley*, 2 J. J. Marsh, 114. *King* v. *Newman*, 2 Munf. 40. In *Desloge & Rozier* v. *Ranger*, 7 Mo. R. 329, this court says: "Courts of equity have never denied to parties the power of making contracts for conditional sales, and if the form of the instrument, together with the extrinsic circumstances attending the contract, are conclusive of the intention of the parties, it is not their province to interfere. When the form of the instrument is not conclusive, either way, resort must be had to the circumstances attending the transaction, and if, upon a full view of the whole matter, doubts may be

reasonably entertained as to the real intent of the parties, courts of equity have inclined to regard the transaction as a mortgage. " In this last case, certain distinguishing features of a conditional sale are mentioned, which are taken from the opinion of the court in *Bennett* v. *Holt*, 2 Yerg. 6. But the particulars mentioned as belonging to such a transaction are, at last, but facts in evidence in the case, which are entitled to great weight in determining what was the intention of the parties.

The great question in this case, and the one upon which we wish a clear finding of the court, is, whether at the time of the conveyance to Brant, and of his covenant to Robertson, there was a subsisting debt from Robertson to Brant. This will be determined by finding whether Brant held the notes of Robertson by assignment from Ford; and if he did not, whether he advanced the money to Ford in payment of the notes, upon any express undertaking of Robertson, to repay the money, otherwise than by forfeiting his interest in the property. If the fact be found, that Robertson at and after the execution of the instruments, was not the debtor of Brant, either by reason of Brant's being the holder of his notes by assignment, or by reason of his personal undertaking to repay the money paid to Ford, then the transaction, as it is now presented upon the record in its other features, would appear to be a conditional sale; and these features remaining, nothing can change its character, but establishing the fact of personal indebtedness from Robertson to Brant, in one or the other form before indicated.

4. Upon the second question, whether if the transaction be a conditional sale, Robertson had any interest in the property vendible upon execution, the views of the court will be briefly expressed.

It is conceded, that there was no interest which could be recognized as an estate at law, except that he was in possession. But, it is contended, that a person in possession of land, under an agreement to purchase, has such an interest, as, under our

statute, may be sold on execution.   If this be admitted, it is
not perceived that, in the present case, it would be of much
value, in support of the title acquired by Brant under the
sheriff's sale.   The agreement or covenant which is set up
by Robertson, and under which he now claims, makes no men-
tion whatever of the possession, or how the property is to be
occupied; and, therefore, the possession is not to be consid-
ered as a possession under it, if there is a contract between
the parties which entirely covers the subject of possession.
Robertson's was under a lease from Brant.   While posses-
sion may be evidence of an estate of any dignity or quality,
yet, when the instrument which confers the right to the pos-
session upon the tenant, is produced, the possession is to be
regarded as held under that instrument, and is, in itself, no
evidence of any other or different title in him.   When Brant,
then, purchased at sheriff's sale, he purchased the right which
Robertson had to the possession of the property, which right
arose out of, and was regulated by the lease which he himself
had made to Robertson.   That instrument, and that alone,
conferred the right to the possession upon Robertson, and to
it must be referred the actual possession as held under it, and
so the possession is not to be connected in this case with the
covenant to convey, as made by Brant.   If all weight be given
to the authorities cited upon this point, which can be reason-
ably asked for them, they do not embrace a case like the
present.

But, it is next insisted, that the covenant of Brant, by it-
self, created an interest in Robertson, which was liable to sale
on execution.   The statute subjects to such sale " all real es-
tate, whereof the defendant, or any person for his use, was
seized in law or equity, on the day of the rendition of the
judgment, order, or decree, whereon execution issued, or at
any time thereafter."   *Revised Code*, 478.   The 66th section
of the act, Rev. Code, 488, directs that the term " real
estate," as used in the act, shall be construed to include " all
estate and interest in lands, tenements and hereditaments. "

The question is presented, whether, if Brant be the undisputed owner in fee of the premises, and has made the covenant in favor of Robertson, which is set out in this case, Robertson by that instrument has any interest in the property before he has elected to make the purchase.

In considering this question, no influence is to be felt from any doubt, whether the transaction, as exhibited upon the whole papers, was not a mortgage. The two views must not be blended. If it was a mortgage, then, under previous decisions of this court, Robertson had an interest that might be sold. But the question is, whether, if Robertson was not a debtor of Brant, and had not paid any thing for this right to redeem, or rather to repurchase, and had not yet determined to repurchase, or offered to pay any money toward a repurchase, and when it could only be regarded as a privilege that he should purchase or not, at his election, he could be regarded as the owner of any interest in the property. It is true, as asserted in Atkinson, on Titles, 33d, that "it is a general principle of equity, that what is agreed to be done for valuable consideration, shall be considered as done, and, therefore, after a contract has been entered into for the sale of land, the vendor becomes a trustee of the land for the purchaser, and the purchaser a trustee of the money for the vendor." But this is for the reason that there is an actual mutual agreement to do the two acts, conveying the land, and paying the money. The case of *Townley* v. *Bidwell*, 14 Ver. 590, is one which appears to establish the reverse of the position for which it was cited. A testator executed a lease to Townley for thirty-three years, with a proviso, that if Townley should desire to purchase the premises in six years, he should pay to the testator, or his heirs or assigns, £600 for the purchase, on having a good title. The testator died within the six years, and within that period, Townley declared his option to purchase. The question in the case was, as to the rents before the option, and when the real was converted into personal estate. The Lord Chancellor declared: "The court must proceed upon a principle applicable to all cases.

Brant *v.* Robertson.

That principle is, that when the condition is performed, the agreement becomes absolute, and there can be no distinction between an agreement so become absolute, and one absolute in its origin. When, therefore, the tenant asserted his right under the option, from that moment that portion of the real estate was to be considered personal." Until the option was declared, the property, as real estate, was in the heir or devisee ; when it was declared, equity would regard the right of the real estate, as in the persons entitled to the personalty. This case appears strangely to sustain the position, that until the election was made by Robertson and the money tendered, there was no interest in the real estate vested in him.

Without reviewing the decisions from other states, cited in the briefs of counsel, 'it is probably sufficient to declare the view entertained of the meaning of our statute, upon the question now under consideration. When parties have bound themselves by agreement to convey land and to pay for it, equity recognizes an interest in the land as already in the purchaser, and the case is the stronger when the purchaser has actually paid in whole or in part ; and in either case, the interest of the purchaser may be sold on execution, upon the principle that the vendor is to be regarded as seized in equity to the use of the purchaser. But if no money has been paid, and if the person who may become the purchaser is not actually under. any obligation to pay, then there is no seizin in the seller, even in equity, to the purchaser's use, and there is no interest in the land in him, which is liable to sale on execution.

Upon the imperfection in the finding, the judgment will be reversed and the cause remanded.