## STEPHENS *v.* ALLEN, ET AL.

DEED—MORTGAGE.—The only safe criterion in determining whether a transaction was intended as an absolute sale or a mortgage to secure the payment of a debt, is the intention of the parties; and this necessarily requires evidence of the situation of the parties, of the price fixed in connection with the value of the property, the conduct of the parties before and after, and all the surrounding facts and circumstances so far as they are adpated to explain the real character of the transaction.

IDEM.—Evidence of these circumstances and relations is admitted, not for the purpose of contradicting or varying the deed, but to establish an equity superior to its terms.

IDEM—CONSTRUCTION OF DEED AND MORTGAGE.—As a consequence of this doctrine, each case must be scrutinized and judged by its own special facts; and when the result of the evidence is to produce doubt, the courts incline to construe the transaction to be a mortgage.

DEBT.—It seems to be clear, upon admitted principles of law, that on the payment by H. & A. to L. & T. of the money due from S. to L. & T., S. became the debtor of H. & A. for that amount, as it was paid at his request and for his benefit.

IDEM.—The fact that no note or other personal obligation was given, is not conclusive of the nature of the transaction. A debt may well exist without these, when the whole evidence of it rests in the memory of witnesses.

MORTGAGE—OBJECT OF.—The object of a mortgage is to secure a debt; to effect that purpose, the right of dispositionmust exist some where, and be founded on the contract of the parties either express or implied.

CONVEYANCE TO SECURE PAYMENT OF MONEY IS A MORTGAGE.—The convey-
ance of lands for the purpose of securing the payment of a sum of
money, if it leaves a right of redemption upon payment of the debt, and
if there is a power of sale, whether in the creditor or some third person
to whom the conveyance is made for that purpose, it is still in effect a
mortgage.

IDEM—FACTS DETERMINE CHARACTER OF CONVEYANCE.—It is always with
regard to the actual facts, and not to the form of the transaction, by
which equity is governed in determining the real character of the in-
strument; whether intended as an absolute conveyance, or a mortgage,
it is equally valid, and equity will give effect to it according to the sub-
stantial intent of the parties.

APPEAL from Multnomah County.

*George H. Williams and B. Killen,* for appellants.

*Thayer & Williams and H. T. Bingham,* for respondent.

By the Court, LORD, J.:

The object of this suit is to have certain conveyances of
lands, made by the plaintiff to the defendants by deeds ab-
solute upon their face, declared to be mortgages, to secure
an accounting for so much of said lands as have been sold
by the defendants, and to compel them to reconvey the
residue of said lands to the plaintiff. The principal ques-
tion involved, and to which the argument is almost wholly
directed is, whether the transaction between the parties was
an absolute sale of the lands in dispute, or a pledge of them
to secure the payment of the debt and expenses which the
defendants paid and assumed on behalf of the plaintiff. As
such a transaction receives its character from what the par-
ties intended to make it at its inception, the ascertainment
of that intention always becomes the important inquiry.
This necessarily requires evidence of the situation of the
parties, of the price fixed in connection with the value of
the property, the conduct of the parties, before and after,
and all the surrounding facts and circumstances so far as

they are adapted to explain the real character of the trans-
action. "As the equity upon which courts act," says Field,
J., "arises from the real character of the transaction, it is of
no consequence in what manner this character is established,
whether by deed, or other writing, or by parol. Whether
the instrument, it not being apparent from its face, is to be
regarded as a mortgage, depends upon the circumstances
under which it was made, and the relations subsisting be-
tween the parties. Evidence of these circumstances and
relations is admitted, not for the purpose of contradicting
or varying the deed, but to establish an equity superior to
its terms. (*Pierce* v. *Robinson*, 13 Cal., 116; *Peugh* v.
*Davis*, 96 U. S., 336; *Cornell* v. *Hall*, 22 Mich., 377;
*Campbell* v. *Dearborn*, 109 Mass., 130; *Brant* v. *Robert-
son*, 16 Mo., 143; *Horn* v. *Kitiltas*, 46 N. Y., 608; Jones
on Mortgages, sec. 258.) As a consequence of this doctrine
each case must be scrutinized and judged by its own sur-
rounding facts and circumstances, and when the result of
the evidence is to produce doubt, the courts incline to con-
strue the instrument to be a mortgage. (*Conway's Exrs.*
v. *Alexander*, 7 Cranch., 218; 3 J. J. Marsh, 354; Jones
on Mortgages, sec. 279.)

It appears by the evidence that at the time the transac-
tion in question took place, "the times were unusually dull,"
and the sales of real estate in that vicinity, slow and low in
price. By a series of untoward circumstances, the plaintiff
had become financially embarrassed, and his property, much
of it consisting of city lots, mortgaged, and about to be sub-
jected to a forced sale. In this emergency, and to prevent
what the plaintiff conceived would result in the sacrifice of
his property, he sought the counsel and assistance of the de-
fendants, who were his friends of many years, and whom he
had accommodated and assisted with his means when the

circumstances of their lives were reversed, and which they acknowledged had materially aided them in securing the competency they then enjoyed. Indeed, it is to the credit of the defendants, that the evidence is replete with so many acts and declarations which indicate the deep sense of their gratitude and obligation to him, their genuine sympathy at his embarrassment, and disposition to afford him whatever assistance or relief they could. The result was that they determined to help him out of the financial troubles and difficulties in which he was involved. They agreed to raise the money and to pay off the indebtedness of the plaintiff, and that he should deed to them as security for the same, and the interest that might accrue thereon, all his property; that the defendants should have the right to sell such property in parcels as purchasers could be obtained, and that the money realized from such sales should be applied to the indebtedness assumed by them on his behalf, and also accruing interest and expenses attending the sales of the same; that the defendant, Allen, should give his personal attention, in conjunction with the plaintiff, in making sales of the property, and that he should be allowed a reasonable compensation therefor, and that after the payment of the amount so due the defendants, including interest and expenses of management, the plaintiff was to have back the entire residue of property so deeded. In compliance with this agreement, the plaintiff by deeds absolute upon their face, conveyed to the defendants all his property, and they paid off his indebtedness, and the defendant, Allen, entered upon the business of negotiating sales, and did thereafter affect sales of a considerable portion of the same, which he applied to the payment of the principal and interest so due by him to them, and the expenses attending the management of the property. Let it be noted here, that the indebtedness of the

plaintiff which the defendants paid· was only about half‛ the value of the property, and that he remained in possession of the most valuable portion of the property, the sales referred being principally city lots.

It is objected, conceding the facts to be true, that there was no debt created ·by the transaction between the plaintiff and defendants. But it is said in *Campbell* v. *Dearborn,* 109 Mass., 681, that "a mortgage may exist without any debt, or other personal liability of the mortgagor. If there is a large margin between the debt, or sum advanced, and the value of the land conveyed, that of itself is an assurance of payment stronger than any promise or bond of a necessitous borrower or debtor." And in the case of *Russell* v. *Southward,* 12 How. (U. S.,) 139, where the question raised was that there was no promise to repay the money, the court say: "The memorandum does not contain any promise by Russell to repay the money and no personal security was taken, but it is settled that this circumstance does not make the conveyance less a mortgage." The fact that no note or other personal obligation was given, is not conclusive of the nature of the transaction. A debt may well exist without these, and when the whole evidence of it rests in the memory of the witnesses. (*Brant* v. *Robertson,* 16 Mo., 143.) But the fact is, a debt was created by the transaction. When the defendants paid to Ladd & Tilton the amount of the indebtedness the plaintiff owed them, the plaintiff became the debtor of the defendants‛ for that amount, because it was paid at his request and on his account. The want of an express promise‛ to repay in such a case is not fatal to the transaction, for the law will imply a promise ·to do so, and as was said in *Southward* v. *Russell, supra,* an action of assumpsit would lie. Note the language of Judge Story in *Flagg* v. *Mann,* 2 Sum., 534: "Now· it seems to me

clear upon admitted principles of the law, that, on the payment by Walker & Fisher to Bennett, of the money due from Richarson to Bennett, Richardson became the debtor of Walker & Fisher for that amount, as it was paid at his request and for his benefit." And the decision of the court in that case was that the conveyance from Richardson to Walker & Fisher was a mortgage. With change of names, apply this language to the case at bar, and Stephens (plaintiff) becomes the debtor of Hawthorne & Allen (defendants) for the amount paid Ladd & Tilton, as it was paid at his request and for his benefit. (Jones on Mortgages, sec. 272, and authorities cited in note.)

It is with regard to the actual facts, and not to the form of the transaction, by which equity will be governed in ascertaining and fixing the real character of the instrument. Whether intended as an absolute conveyance, or a mortgage, the instrument is equally valid, and equity will give effect to it according to the substantial intent of the parties. (*Horn* v. *Kiteltas*, 46 N. Y., 606.) And it seems to us when the facts show that the plaintiff conveyed his real property to the defendants to secure them in the payment of money advanced or paid by them for his benefit, and agreed with them that they should proceed together and sell off the different parcels of it to liquidate that indebtedness, and that when that object should be accomplished, the remainder of the land should come back, or belong to the plaintiff, the transaction bears the impress of a mortgage. It is the conveyance of lands for the purpose of securing the payment of a sum of money, and when that object is accomplished, the purpose of the transaction is consummated, and the right to the residue to redeem the remainder, would seem to belong to the plaintiff upon every principle of justice and equity. In Jones on Mortgages, sec. 271, it is said that "an

agreement that the grantee may sell all the property for the best possible price and retain from the proceeds the amount due him, paying the residue to the grantor, shows that the transaction is a mortgage until the power of sale is executed;" and in *Crane* v. *Buchanan*, 29 Ind., 570, it was held, after the sale the excess over the amount of the debt should be paid to the grantor. In *Lawrence* v. *The Farmer's Loan & Trust Co.*, 13 N. Y., 209, the court say: "But I do not understand that a power of sale granted by the mortgagor, at the time when the mortgage is made, conflicts with the policy or the rules established by courts of equity. The object of the pledge is to secure a debt; to effect that purpose, the right of disposition must exist somewhere, and be founded on the contract of the parties either express or implied. A judicial sale is but the enforcement of the contract—one mode of appropriating the mortgaged property to the satisfaction of the debt. The authority resulting from the contract which a court may exercise in behalf of one of the parties, the mortgagor may confer upon the mortgagee or a third person, it would seem, without any violation of principle. A power to dispose of the property, to satisfy the debt for which it is pledged, is not collateral; but like the right of redemption, inheres in the subject. It is not in addition to the mortgage, but a part of it, and the mode in which it may be exercised is a proper subject of agreement *prima facie*, as the terms of the mortgage itself."

A conveyance of lands for the purpose of securing the payment of a sum of money, if it leaves a right of redemption upon payment of the debt, and if there be a power of sale, whether in the creditor or to some third person to whom the conveyance is made for that purpose, it is still in effect a mortgage. "If there is a power of sale," says Miller, J., in *Shellaber* v. *Robinson*, 97 U. S. R.,

"whether in the creditor or some third person, it is still in effect a mortgage, though in form a deed of trust, and may be forclosed by sale in pursuance of the terms in which the power is conferred, or by suit in chancery." To affect the object of this transaction, it was necessary to convey the property in the form adopted, not only as security for the payment of the money advanced, or paid for the plaintiff, but to enable them to make the sales necessary to liquidate that debt, and when this was done, when the transaction had accomplished its purpose, it would seem upon equitable principles, that the residue of the property, like the excess over the amount of the debt after sale, as decided in *Crane* v. *Buchanan*, *supra*, would belong to the grantor or plaintiff. Such being the object of the transaction, it would be a fraud on the plaintiff when the debt secured by the property is paid, to defeat the right of the plaintiff to the residue. Equity, which abhors fraud, will not permit this, (Sweelzer's Appeal, 71 Penn., 264,) nor a fraudulent use of the statute for the prevention of frauds. (*Ryan* v. *Dox*, 34 N. Y., 308.) The evidence indicates quite clearly that it was not expected to require the sale of the whole property to liquidate this indebtedness. The amount of the debt assumed or paid by the defendant for the plaintiff, was scarcely half the value of the lands conveyed; and when it is considered that immediately before these conveyances were made, that Mr. Ladd, to whom the plaintiff owed the indebtedness, which was subsequently paid by the defendants for the plaintiff and for which the deeds in question were taken, offered, in consideration that the plaintiff would deed these same lands to him, that he would cancel this indebtedness, and in addition thereto give the plaintiff ten thousand dollars in cash and the use of the homestead for life, and that the plaintiff refused to accede to this proposition, and the defendants knew

this when he sought them and that the arrangement which was effected was considered the better for his interests and a sufficient security to them, the inadequacy of the price, considered as a sale, becomes apparent, and an important element in establishing the character of the transaction. (Kerr on Fraud and Mistake, 186, and note.)   Another circumstance, too, which is entitled to much weight, is the fact that the plaintiff continued to use and occupy a valuable portion of this property, and received rent for some other, after these apparent conveyances were made.   The declarations and conduct of the defendants at the time and after the conveyances were made, taken in connection with these facts and the relations of intimacy and friendship subsisting between the parties, are of decisive import in fixing the real character of this transaction.   While it is true declarations or admissions should be closely scrutinized, and weighed with caution, on account of the liability of witnesses misapprehending the language used, and the difficulty of correctly repeating its import, yet when such admissions are deliberately made to a large number of persons, some in the course of business dealings in relation to this property, and extending through the whole period of the transaction, and the general tenor and effect of such declarations or admissions are of like import, they become the most satisfactory evidence.   All through the testimony, and there is no attempt to deny or dispute it, are the declarations of the defendants to numerous persons during the period of this transaction to the effect: that they had got all of Stephens' property, that Uncle Jimmy (plaintiff) had helped them out in times of troubles, and that they were going to help him, and when they sold property enough to get the money back which they paid for him, Uncle Jimmy got the rest of the property.

As cases of this character must be determined upon their

own special facts, it is admitted that these facts should be be of clear and decisive import. They should lead the court to a satisfactory conclusion as to what the parties intended and meant by their contract, so that it may be enforced according to that intent. We are satisfied from the evidence that the lands in question were conveyed as a security for the payment of a debt with, the understanding that the defendants might sell so much as would effectuate that object, and when this was accomplished, that the plaintiff should have the right to redeem the residue. The decree of the court below must be affirmed.