BROADWELL & DYER vs. YANTIS.

1. A. having purchased a tract of land, gets a bond for title upon payment of the purchase money. He then sells his right and transfers the title bond to B. Held—That A. has no interest in the land which is subject to execution.

2. The purchase money being unpaid, the lien of the vendor can not be enforced by a suit *in personam* against A., nor can any interest in the land be sold under an execution in such suit. The purchaser can only enforce his lien in equity.

3. A purchaser from one having only a title bond to a tract of land, will occupy the same position as his vendor, and will be bound by all notice and equities affecting him.

*Broadwell & Dyer vs. Yantis.*

## APPEAL from Callaway Circuit Court.

·ANSELL & KIRTLEY *for Appellants.*

TODD & LEONARD, *for Appellee, insist :*

1st. That the bill should be dismissed for these reasons : *First*—The prayers are multifarious and inconsistent, and cannot be united in the same bill. 9 Mo. R. 293. *Second*—The complainants ask a performance, and do not proffer or tender payment of the purchese money due for the lot.

2nd. That the vendor, Leiper, had a lien upon the estate sold to Nolly for the purchase money unpaid. See 2 Sugden on Vendors, 62. A bond or note taken for purchase money will not affect the lien. Ibid, 67. So the lien continues to the assignee of the debt.

3rd. The purchasers (the complainants,) of the equitable title must always abide by the case or the person from whom he buys, and will be entitled to all the remedies of the seller. See 2 do. 303—4. 7 Mo. R. 524, Barton's adm'r vs. Rector, &c. 8 Mo. R. 374, Durretts vs. Hook.

4th. A purchaser with notice is in equity bound to the same extent and in the same manner as the person was of whom he purchased. 2 Sug. 307.

5th. The complainants must, before performance is required of debt on the title bond, aver and show performance of Nolly's obligation to pay the purchase money to Leeper for the purchase of him. 1 Sugden, 291—2—3, 296—note 159.

6th. The complainants cannot obtain a rescission of the contract when the fault for non-performance is upon them.

7th. They cannot procure damages in chancery upon the prayer exclusively for damages, but must sue at law.

NAPTON, J., *delivered the opinion of the Court.*

This was a bill in chancery brought by Broadwell & Dyer in the Circuit Court of Callaway County against John L. Yantis. The facts alleged in the bill as the ground of the complaint are as follows :—

Tate & Nolly (a mercantile firm in Fulton,) being in possession of two lots in that town, numbered 177 and 178, which they had purchased of one Leiper, for $1050, and upon which purchase there was a balance due said Leiper of about $600, exchanged them with John L. Yantis for four lots then in his occupancy numbered 179, 180, 181 and 182, giving said Yantis, as the estimated difference in the value of the two blocks, $150. These last named lots had been bought by Yantis of one Hockaday for $1100, and at the time of the exchange a considerable portion of the purchase money was still due from Yantis to Hockaday. Both Yantis and Hockaday were aware of the incumbrances upon the lots at the time of the exchange. This exchange was made on the 22nd August, 1840, and Nolly being put in possession of the four lots, (originally belonging to Hockaday,) received from Yantis his title bond acknowledg-

ing the receipt of $1200, and agreeing to convey at the expiration of twelve months from the date of the bond.

On the 15th September, 1842, this title bond of Yantis for the four lots agreed to be conveyed to Nolly, was assigned by Tate & Nolly to the complainants Dyer & Broadwell, to secure them as endorsers of a note in bank given by the firm of Tate, Nolly & Cook; thereupon the said Dyer & Broadwell, as the bill asserts, took possession of these lots and immediately leased them to Nolly for a year. This was in October, 1842.

Yantis in the meantime having received immediate possession of the two lots which he received from Nolly, being the same which had originally belonged to Leiper, and upon which Leiper still had a lien for a part of the purchase money, sold them to Asa Farrar for $1000. After this transfer to Farrar, Nolly's notes to Leiper which had been assigned to one Henderson, was put in suit by Henderson; judgment being obtained against Nolly, the execution was levied upon the two lots sold to Farrar, and then in Farrar's possession, and the lots were sold in January, 1843, Yantis becoming the purchaser for about $500. Yantis obtained a deed from the Sheriff.

Previously to this, in December, 1842, Yantis having paid up the balance of the purchase money due to Hockaday, obtained a deed for the four lots which in the exchange between him and Nolly were to have been conveyed to Nolly. In October, 1843, he commenced an action of ejectment againt Nolly, who was in possession as tenant under the complainants Dyer & Broadwell, and in 1845, obtained a judgment.

Upon this state of facts the bill prays, first, that the complainants may be substituted to Nolly's rights against Yantis; second, for a recission of the contract between Yantis and Nolly, and a conveyance of the two lots bought in at the sale under Henderson's execution, and a return of the $150, with interest received of Nolly; or, third, if Yantis retains the $150, that complainants upon paying to Yantis the remainder of the $500 paid by him on Henderson's execution, shall have a conveyance of the two lots; or, fourth, if the Court shall consider Yantis's transfer to Farrar as precluding a re-conveyance of these two lots, then that Yantis pay complainants the $1000 received of Farrar as the purchase money for said lots, and the $150 obtained from Nolly on the exchange; or, fifth, that the Court decree a sale of Yantis's lots which he bought of Hockaday to reimburse the complainants as securities as aforesaid for Tate & Nolly; and lastly, for general relief.

The answer of Yantis admits all the principal facts, as stated in the bill, and states as an additional fact, that the complainants knew of the sale under Henderson's judgment, but refused to purchase at said

sale. This statement is corroborated by the proofs taken in the cause.

A general replication was filed, and on the final hearing the bill was dismissed with costs; a motion for a re-hearing was made and overruled, and the complainants filed a bill of exceptions. The case is brought to this Court by appeal.

Amidst the various modes of relief suggested by the prayer of the complainants, there are several which seem to be based upon the position that they do not occupy the same ground which Nolly, their assignor would do, and that the lien of Leiper for the purchase money due by Nolly does not affect their rights as assignees of Yantis's title bond without any knowledge of such unextinguished lien. This position has been assumed in the bill and contended for at the bar, and may as well be noticed here as preliminary to any further examination of the subject; for it is manifest that if this ground be maintainable, the complainants are entitled to a conveyance of the block of ground for which they hold the title bond of Yantis, without being affected by any of those equitable considerations which would operate upon Nolly.

That our statute regulating the assignment of bonds and notes for the payment of money or property has no application to such bonds as the one transferred to the complainants may be readily conceded. This act was designed to restore the common law in regulating bonds and notes of a certain description, and to prevent their confusion with commercial paper which had become entangled by technical rules not understood by the great mass of the community. By the common law the assignee of a chose in action stood in the same condition as the person from whom he purchased : he acquired no additional rights or privileges by the assignment. To subserve the interest of commerce, the law merchant modified this rule ; the question of notice arose, and a variety of others, upon which the rights of the holders of negotiable paper depended, and the endorsee became subject to different rules from those which regulated the assignee at common law. A bond or covenant to convey land, we presume, is unaffected by the statute, and the assignees of such a bond can occupy no other or better ground than the person from whom they purchased. They are merely the equitable owners of the bond, and if they institute a suit at law for a breach of the covenant they must sue in the name of the assignor, and when they come into a Court of Chancery they can only ask to be substituted to the rights of the assignor.

The question of notice does not arise in this case. A lien exists in favor of the vendor of land for the purchase money whether a title be

made or not; but when the title has been made, the lien may not reach a *bona fide* purchaser without notice. A title bond, however, is of itself sufficient to put a purchaser upon enquiry, and he is presumed to be cognizant of the reasons which induce the vendor to withhold the title. It is not material, therefore, whether the complainants, when they purchased the title bond of Yantis, knew of the incumbrance of Leiper upon the lots which constituted the consideration of that bond; they must take the obligation of Yantis subject to all the equities existing against Nolly, from whom they purchased.

Assuming, then, that the complainants occupy the same position in a Court of equity which Nolly, from whom they purchased, would have occupied, it is obvious that the principal question upon which the equitable rights of these parties must depend, grows out of the character and effect of the purchase made by Yantis under Henderson's execution. If Yantis by that purchase acquired a valid, legal title, independent of the equitable interest which he had previously procured from Nolly, by virtue of the exchange between him and Nolly, it must follow that neither Nolly or his assignees can expect to derive any benefit from that purchase. Viewing it in that light it would be a mere speculation outside of the contract between Nolly and Yantis, and a Court of equity would not interfere, whether the speculation proved a profitable or losing adventure. But if on the other hand the sale under Henderson's execution was a nullity, and the Sheriff's deed passed no title, a Court of equity would regard the extinguishment of Leiper's incumbrance as accruing to the benefit of the parties equitably entitled to the land, in whatever proportion that equitable interest might exist.

What interest then had Nolly in these lots derived originally from Leiper at the time Henderson's execution was levied upon them? It seems that Leiper held Nolly's notes for a balance due upon his purchase of the lots for about $400, and that he transferred these notes to Henderson. Henderson brought suit upon the notes, recovered a judgment against Nolly, and sued out an execution, which he caused to be levied upon these lots, then in the possession of Farrar. Previous to the levy, and indeed before the judgment of Henderson, Nolly had sold his equitable title to Yantis, and Yantis had transferred it to Farrar, so that at the time these lots were levied on, Nolly had neither possession nor any interest, either equitable nor legal, unless it be that remote equity which depended on the contingency of a recission of the contract between himself and Yantis. In the case of Bogart vs. Perry, (1 Johns. Ch. R.

51,) the chancellor held that a mere naked equity could not be reached by an execution. There must be an interest in land which a Court of law can protect or enforce, in order that it may be subject to the lien of a judgment and execution. A mere equity unaccompanied with possession is not such an interest. The Sheriff's deed passes all the estate and interest which the *debtor* had or might lawfully part with in the lands at the time the judgment was obtained. Nolly was the debtor in the present instance, and when Henderson's judgment was obtained, Nolly had sold his equitable interest in the land to Yantis, and had parted with the possession. Suppose a stranger had been the purchaser instead of Yantis—what sort of title would he have acquired by the purchase? Could he have asserted or maintained his possession in a Court of law, divested of the equitable rights of Yantis or the person who purchased of Yantis? If the judgment obtained by Henderson was a lien upon these lots, or rather upon Nolly's supposed interest in these lots, it must follow that a judgment by any other creditor would have had the same effect. This would lead to the manifest absurdity of suffering the lien of the vendor to be extinguished by a proceeding to which he would be an utter stranger, and in the benefits of which he could not participate.

These considerations show most conclusively, in our opinion, that a vendor cannot enforce his lien upon land which has passed from the possession of his vendee, by a suit *in personam* against the vendee, upon the notes given for the purchase money. The rights of the parties cannot be adjusted without a resort to a Court of equity. The course pursued in the present instance would be liable to all the objections noticed by this Court, in the case of a mortgagee who attempts to cut off the equity of redemption by a sale, under a judgment obtained against the mortgagor, upon the debt for which the mortgage was a security. Yantis cannot set up an independent title under the sheriff's deed. So far as the title to these lots is concerned, that transaction did not affect it. By means of it, Leiper obtained his purchase money; his lien was extinguished, and he held a bare legal title, subject to be transferred by a Court of equity to the equitable owner. Yantis would unquestionably be considered the equitable owner, not, however, merely because of his payment of five hundred dollars to the sheriff, and the consequent virtual extinguishment of the lien of Leiper, but because he also had previously acquired from Nolly his equitable title, and becoming in this way the owner of the *whole* equitable title, with only a naked legal title outstanding in Leiper, he would be entitled in a Court of equity to be regarded as both the legal and equitable owner of these lots. It is the interest acquired

by the contract with Nolly, then, which enables Yantis to acquire an unincumbered title. Without this interest his title would be of no avail, either in law or equity.

We shall assume, then, without further argument upon this branch of the subject, that the title which Yantis acquired to the *Leiper lots*, grew out of the contract between him and Nolly. The sale of those lots to Farrar, and the purchase of the outstanding incumbrance, must be regarded as an affirmance of that contract. It is true, that Yantis subsequently brought an action of ejectment upon his legal title to the block of ground conveyed to him by Hockaday, and ousted Nolly from the possession of that block; but this did not extinguish the equitable interest of Nolly. Yantis could not blow hot and cold with the same breath. He could not avail himself of the contract with Nolly, to acquire a complete title to the block of ground originally belonging to Leiper, and at the same time repudiate that contract by resuming possession of the block he had purchased of Hockaday, and had contracted to convey to Nolly. Had his title to the Leiper lots been acquired independently of his contract with Nolly, he might have rescinded that contract in consequence of Nolly's failure to comply with its terms. But this we have seen, was evidently a misapprehension, on his part, and seems to have misled him in the course he subsequently pursued. A Court of equity would not permit him to retain both blocks of ground, and the one hundred and fifty dollars which he received from Nolly, on the contract of exchange, free from all equitable title in Nolly, or Nolly's assignees, nor would it be equitable to permit Yantis to suffer any pecuniary loss by his purchase of the incumbrance of Leiper. That purchase appears to have been occasioned by a laudible solicitude on the part of Yantis, to comply with his contract with Farrar. We, however, must regard that contract with Farrar as a virtual affirmance of the previous contract with Nolly, as it was made with a full knowledge of the outstanding legal title of Leiper. Nolly's assignees are consequently entitled to the benefit of that contract, and may have the title to the four lots purchased from Hockaday, upon reimbursing Yantis for his expenses in procuring the legal title to the lots purchased from Leiper. We shall, therefore, direct a decree for a sale of the lots numbered 179, 180, 181, and 182, and that from the proceeds of the sale there shall be paid to John L. Yantis, the amount which he paid on the execution in favor of Henderson, with interest at the rate of six per cent, from the time of payment, he accounting for the rents and profits of the lots, and the remainder to be paid to the complainants. As the time, place and terms of sale may be more satisfactorily determined in

the Circuit Court, the judgment of that Court is reversed, and the cause remanded.