McIlvaine v. Smith et al.

McILVAINE, Plaintiff in Error, *v.* SMITH *et al.*, Defendants in Error.

42   45
96   443
96   444

42   45
112  351

1. *Execution—What Estates Vendible—Mere Trusts in Equity not Vendible.* The statute (R. C. 1855, pp. 740, 753, §§ 17, 73) contemplates an interest or estate in the land, of which the defendant or the trustee for his use is seized in law or equity; and where there is no seizin of such an equitable estate there is no interest in the land which is liable to execution. There must be an interest in the land which a court of law can protect or enforce, in order that it may be subject to the lien of a judgment and execution; but a mere equity, unaccompanied by possession, is not such an interest. When the *cestui que trust* has no seizin or possession of the land, no power to dispose of any estate in the land, or to enjoy the occupancy, or to collect the rents and profits, nor power to call upon the trustee for a conveyance to himself, he has no estate in law or equity which could pass under sheriff's sale.

2. *Equity — Debtor and Creditor — Creditor's Bills — Equitable Interest — Trusts.*—A party cannot tie up his own property, under a trust, in such manner that he may be enabled to enjoy the income thereof and set his creditors at defiance. This the law does not allow. A man cannot own property or money and not own it at the same time. He cannot be permitted to have the beneficial enjoyment of an income of such a nature, beyond the reach of his honest debts. The proper remedy in such a case is a bill by the judgment creditor to have the rents and profits, as they accrue, applied in equity to the satisfaction of the debt, as far as they will go, and the powers of a court of equity are ample to make the remedy effectual. The trustee may be enjoined from paying over the income to the judgment debtor, and be directed to pay it over in satisfaction of such decree as may be rendered.

### Error to St. Louis Circuit Court.

This suit was instituted by plaintiff against Garesche as trustee, and Thomas F. Smith as *cestui que trust*, under two deeds made by Charles Gibson to John F. Riggin, original trustee. Under a power of appointment reserved to Smith to change the trustee,

but not the uses or trusts, Weissinger at first, and subsequently Garesche, had been substituted as trustee.

The petition in substance alleged that Gibson was only nominally the owner, by purchase from Smith, of the realty described in the petition and situate in St. Louis county; that Gibson, by two deeds, one dated the 14th day of April, A. D. 1857, and the other the 26th July, 1857, conveyed this realty to John Riggin, as trustee, for the following uses and trusts:

"That the said Riggin should have and hold the above described premises, and all the appurtenances thereto belonging, unto him and his legal representatives, subject to the following trusts, to-wit: 'During the life of Thomas Floyd Smith, lieutenant in the United States Army (that is, the defendant), said trustee shall control and manage the said property, and shall rent and lease the same for such periods and upon such terms as shall make the same most productive, and shall receive the rents, issues, and profits of the same; and shall, out of such rents, issues, and profits, pay all taxes, assessments, and other charges upon said property, insurances upon the buildings which are or may be erected thereon, and other expenses; and shall pay over to said Thomas F. Smith, at the end of each quarter of a year during his life, the net product of said property, such payments only to be made to said Thomas F. Smith in person, or upon his order, drawn after each quarter's income shall have actually accrued, with the express limitation, upon the right of the said Smith to receive such income, that if, at any time during any quarter of the year, and before the income for each quarter becomes due, or at any time whatever before such quarter becomes due, said Thomas F. Smith should, by drawing orders upon such trustee, or in any other manner, attempt to anticipate the income of any quarter, then such income for the quarter or quarters sought to be anticipated shall not be paid to the said Smith or upon his order, but shall become a fund in the hands of the said trustee for the benefit of those entitled to the said property and its profits under this deed, according to the terms hereinafter provided; and the money accruing from the property during the quarter thus to be anticipated by the said Smith shall be loaned out by the said trustee, and shall be accumulated during the life of said Smith, and paid out after his death in the manner hereinafter provided—the design of this whole provision for the benefit of said Thomas F. Smith being to give to the said Thomas F. a right to and interest in the rents, issues, and profits of the said property only after the actual accruing of each quarter's rent, so

that before it has actually accrued neither he nor any other person claiming through him shall ever obtain any claim to or interest in any rent of any current quarter; and any attempt to control or anticipate the rent of any quarter before it is actually due shall prevent him or his assigns from ever having any rights or interest in the rents, issues, or profits so attempted to be anticipated.' And this conveyance is made upon this further trust: 'That if the said Thomas F. should, at his death, leave any child or children or their descendants living, then said trustee shall convey said property, and pay over all funds in his hands arising from said property, to such child or children or their descendants, in such shares and proportions as the said Thomas F. may by any writing in the nature of a last will direct; but if he should die without giving such directions, then the same shall be conveyed and paid over to such child or children or their descendants, in the same shares and proportions in which they would take real and personal property left by him to descend to and to be distributed among them by law.' And this conveyance is made upon this further trust: 'That if the said Thomas F. shall at his death leave neither child nor the descendants of any child living, and if he shall by last will and testament direct said trustee to convey the said property or any part thereof, or to pay over any of the money that may be in his hands under this trust, to any person, then said trustee shall convey the same and pay over the funds according to such direction.'"

The deed further provided that if Smith died intestate, without children or their descendants, then the property should be held by the trustee for his brother and sister, subject to similar restrictions as before, and upon their death be conveyed to such persons as would by law be entitled to real estate descending from said Smith as his heirs.

"And this conveyance is upon this further trust: 'That the said Thomas F. Smith during his life, and after his death those who succeed him in said property, shall have the right at any time to serve a written demand upon said trustee to convey such estate in said premises as is hereby vested in said trustee to another trustee, to be named in such demand; and thereupon said trustee shall convey the said property to such new trustee upon the like uses and trusts, and subject to the same limitations and restrictions, herein above set forth — the object of this clause being to confer on said Thomas F. Smith during his life, and after his death those who succeed him as aforesaid in said property, the power to substitute another trustee in place

of said trustee herein named, but not in any manner whatever to *affect or change the uses and trusts, or to alter, modify, increase, or diminish the limitations, restrictions, and stipulations hereinbefore mentioned.'*"

Petition further stated that "said Garesche has been duly substituted for said Riggin as trustee; that Grimsley & Co., on the 20th of November, A. D. 1860, and plaintiff, on the 22d of March, 1861, recovered judgment against said Smith; and that at a sheriff's sale, under executions issued in pursuance of these judgments, plaintiff, on 3d of May, 1861, acquired the title of Smith to this realty, and it was conveyed to him by deed duly executed, Smith at the time being in the enjoyment of the rents, issues, and profits, as granted to him by these deeds."

Petition prayed that Garesche "be ordered and decreed by the court to pay and render to the plaintiff, from and after the day of the filing of this petition, and for and during the remainder of the natural life of him, the said Smith, by virtue of the said deeds of trust from said Gibson to said Riggin; and that the said Garesche, or his successors, in the capacity of trustees of said property, be enjoined from paying the same to any party or parties other than the plaintiff or his assignees; that generally the plaintiff herein may be fully subrogated, for and during the remainder of the life of the said Smith, to all the rights and interests which he, the said Smith, had in and to the said deeds from said Gibson to said Riggin, as aforesaid."

A demurrer to the petition being sustained, the case came up to this court upon writ of error.

*Cline, Jamison & Day*, for plaintiff in error.

I. By the terms of the deed of Gibson and wife to Riggin and his successors in trust, a freehold estate for life in the use of the land in question was created in Smith, with power to appropriate the remainder in fee among his children, if he had any, at his death, and in default of children, then to any person he might see fit; and in default both of children and appointment of Smith, at his death the estate went over to his brother and sister and their children in fee.

II. Thomas F. Smith was entitled, by the terms of said deed, to the use of said estate for life, the legal estate being vested in the trustee; and by virtue of the judgments, executions, levies, sale, and sheriff's deed, all of Smith's interest, both at law and in equity, was sold, transferred, and became vested in the plaintiff, McIlvaine — 2 Stor. Eq. p. 974; Green v. Spicer, 1 Russ. & M. 395.

III. Smith's equity in the land and right to the use of the estate were, by the terms of the deed, fully vested in him, and created such an estate and interest in lands as was liable to be seized and sold under judgment and execution against him to satisfy his debts. Our statute will not permit a debtor to enjoy the dominion and use of an estate and property in lands without subjecting such estate as he may have to be sold to pay his debts. Our execution law subjects all a man has *as property* to the payment of his debts—R. C. 1855, § 17, p. 740; Anthony v. Rogers, 17 Mo. 394; Rankin v. Harper, 23 Mo. 579; Dunnica v. Coy, 24 Mo. 169; Brant v. Robertson, 16 Mo. 129; Dick v. Pitchford, 1 Dev. & Batt. Eq. 480; 4 Wend. 462; 4 N. H. 397; Hallett v. Thompson, 5 Paige Ch. R. 585; Whiting v. Whiting, 4 Gray, 236; Brandon v. Robinson, 18 Ves. Jr. 429; Barton v. Briscoe, 1 Jac. 603; Newton v. Reid, 4 Sim. 141; Jackson v. Hobhouse, 2 Meriv. 482; Bradley v. Peixoto, 3 Ves. 325; Graves v. Dolphin, 1 Sim. 66; Shee v. Hale, 13 Ves. 404 and note; Bank of the State v. Forney, 2 Ired. Eq. 181; Snowden v. Dales, 6 Sim. 524.

IV. The forfeiture must be equal to the entire estate; otherwise it is a mere clog on the property and enjoyment of the freehold, which is not tolerated by law—Brown v. Pocock, Coop. Ch. R. 70; Jac R. 603; 18 Ves. 429; 1 Sim. 66; Younghusband v. Gisborne, 10 Jur. 834. The court will see, by inspection of this petition, that no forfeiture is to result (whether the same be void or not) except by the voluntary act of Smith. If this extended to Smith's entire estate in the lands, it would not cover an alienation by operation of law, nor by virtue of judgment, levy, execution, and sale of Smith's interest in the use—Doe on

Demise of Hutchinson v. Carter, 8 T. R. 57; 1 Sim. 66; 2 Sim. 479.

V. Plaintiff is entitled to a decree on the facts stated in the petition. He acquired the estate vested in Smith at sheriff's sale, by virtue of the deed set out in the petition, and thus became owner of the use and fully seized of the equitable freehold estate for life that was fully vested in Smith by the deed of Gibson and wife to Riggin; and Garesche, by accepting the trust, became clothed with the legal estate for the use of the plaintiff—Barton v. Briscoe, Jac. R. 603; Brandon v. Robinson, 18 Ves. 429; Brandon v. Robinson, 1 Rose, 197; Dick v. Pitchford, 1 Dev. & Batt. Eq. 480; Bank of the State v. Forney, 2 Ired. Eq. 181; Bradley v. Peixoto, 3 Ves. 324; Britton v. Twining, 3 Meriv. 174. Restraints upon alienation of the property of a married woman have been held good, but upon the death of the husband it becomes the absolute property of the widow, and she must enjoy it with the usual incidents of property—Jac. R. 603; 1 Coop. Ch. Cas. 70; 18 Ves. 429; 2 Russ. & M. 197; 1 Rose, 197; 4 Sim. 141; 1 Sim. 66.

The above cases are all to the effect that a clause in a devise against anticipation or alienation, but without forfeiture or gift over of the estate, does not prevent alienation.

VI. This is a provision by Smith in his own behalf, in disguise, to hold this property exempt from his creditors by introducing into the deed of Gibson, back to him, certain clogs which they hoped would be sufficient to place the property of Smith beyond the reach of his debts. Equity can have no difficulty in striking through this entire transaction and in discovering its purpose; and in so doing will treat the deed of Smith to Gibson and Gibson's deed back to Smith as a single instrument, and hold that all clogs of this nature, attached to property, are not only void as being inconsistent with his right to the estate, but also void on the ground of being contrary to the policy of the law. As a general rule, it is contrary to sound public policy to permit a person to have the absolute uncontrolled ownership of property for his own purposes, and to be able, at the same time, to keep it from his honest creditors—Hallett v. Thompson, 5 Paige Ch. R.

585; Rider v. Mason, 4 Sand. Ch. R. 352; Bridgen v. Gill, 16 Mass. 522.

VII. These forfeitures provided by the deed, on Smith's attempt to anticipate the rent of any given quarter before it falls due, are void on the additional ground that the quarter's rent so attempted to be anticipated becomes an executory use, limited on a contingent remainder in personal chattels, without any one in being to take the chattel at the time of the forfeiture. It is to be held up in the hands of the trustee on accumulation until the death of Smith. Then they are to go to his children, if he have any, or to his appointee among them, or to his appointee generally, etc., although the child who may take this fund by appointment or otherwise may be in *ventre sa mere* at the time of his death. There is no one in being who can take the chattel or who is entitled to its use. It remains in the hands of the trustee, as a mere custodian upon an indefinite accumulation, awaiting the appearance of a future contingent owner. This cannot be permitted under the law governing titles to things personal, and the more especially when it is a mere contrivance to place it beyond the reach of creditors.

VIII. To be vendible under execution, the trust must be a clear and simple one for the benefit of the *debtor only*. If it be, as in this instance, a trust partly for the benefit of the judgment debtor and partly for the benefit of third persons, it is not within the statute regulating executions — See Ontario Bank v. Root, 3 Paige, 478; Doe v. Greenhill, 4 Barn. & Ald. 684; Harris v. Booker, 4 Bing. 96.

*Field, Hamilton & A. J. P. Garesche*, for defendants in error.

I. Smith had no estate or interest in the land that was subject to levy or sale under execution, and, in fact, the sheriff's deed to the plaintiff conveyed nothing.

It is material to observe that the plaintiff does not impute fraud in the execution of the trust deed; nor does he seek to set it aside. On the contrary, he treats the deed as perfectly valid, and

founds his claims on its provisions—Bogert v. Perry, 1 Johns. Ch. Cas. 52. Here it was declared that, under a statute not materially differing from our own, no trust estates were subject to execution except such as gave to the *cestui que-trust* the whole control of the property, and where the trustee took merely a formal legal title. Chancellor Kent in that case said : "Executed trusts only are subject to be sold on execution. The *cestui que trust* must have the beneficial interest, and the trustee the mere formal legal title "—Broadwell v. Yantis, 10 Mo. 402 ; Brant v. Robertson, 16 Mo. 130 ; Kelly v. Beers, 12 Mass. 398, § 388 ; Hatfield v. Wallace, 7 Mo. 114.

All the cases agree that the interest of a debtor, to be subject to execution, must be in the *very land ;* and not a mere collateral right, as an encumbrance or charge, or the proceeds of sale to be made by another, or the rents' and profits to be taken by a trustee and paid over to the debtor.

Thus, it has always been held that a mortgagee has no interest in the land subject to execution — Blanchard v. Colburn, 16 Mass. 345 ; Baker v. Copenbarger, 15 Ills. 103 ; Morrow v. Brenizer, 2 Rawle, 185 ; Brewster v. Striker, 2 Comst. (N. Y.) 19 ; Roberts v. Hall, 35 Vt. 28 ; Fisher v. Taylor, 2 Rawle, 33 ; Vaux v. Parke, 7 Watts & S. 19 ; Ashhurst v. Given, 5 Watts & S. 323 ; Paine v. Webster, 1 Vt. 134.

That choses in action are not subject to be taken in execution, see Van Ness v. Hyatt, 13 Peters, 294 ; People v. Haskins, 7 Wend. 463 ; Payn v. Beal, 4 Denio, 405.

II. The deed from Gibson to Riggin creates a valid trust, under limitations and restrictions that are effectual in the law ; and the creditors of Smith, becoming such after the date of the trust deed, cannot in equity break up this trust and take from the children the income that the deed expressly declares shall be accumulated for their benefit in the event of any attempt to transfer the same from Smith to another person.

In regard to estates in fee simple, it is an old-established rule in the law that conditions imposed by the grantor in restraint of alienation, or of such enjoyment as is incidental to property, are invalid, as being repugnant to the grant.

But in respect to estates for life, the rule is otherwise; and the grantor may provide for a *cesser* of the estate in the event of the bankruptcy or insolvency of the grantee, or of any attempt on his part to alienate the estate.' Such provisions are perfectly valid, and will be upheld by the courts, although they impress upon the estate a character quite the opposite of that which they derive from the law.

The English cases establish the rule as just stated — Dommet v. Bedford, 6 T. R. 684, S. C. 3 Ves. 149; Cooper v. Wyatt, 5 Mad. 293.

The English cases, in general, require that the restrictions upon the life tenant, in order to be effectual against creditors, should be accompanied with a gift over, and a gift for life, and a mere declaration that the estate should not be subject to debt would not be sufficient to exclude the rights of creditors. This distinction grows out of the policy of the English bankrupt laws.

The American courts, however, have upholden such settlements where there was a mere declaration in the deed that the life estate should not be subject to debts, unaccompanied with any gift over or provision for *cesser*.

An examination of the provisions of the trust deed in the present case will show, as we think, that the exclusion of the creditors of the life tenant is effectual, even under the narrow rule of the English courts in cases of bankruptcy.

By these provisions the quarterly payments were to be made only to Smith in person, or on his orders after the installments were payable, and any attempt to anticipate the installments, or in any way to control them before they were actually due, was to put an end to the right of Smith or his assignee under the deed, and the whole benefit was to go over to other parties.

These limitations on the life interest of Smith are believed to be perfectly valid, under the rule recognized by all the adjudged cases. But to maintain the suit of the plaintiff, it would be necessary to set aside these limitations, and declare that the creditors of Smith were entitled to take under the deed what the deed expressly declares shall go to his children.

In the American courts it has uniformly been held that a pro-

vision in instruments creating life interests, to the effect that the property shall not be subject to debts, is valid without any gift over. And this is reasonable; for, in substance, it amounts to no more than a restraint upon a particular form of alienation — Perkins v. Dickinson, 3 Grattan, 335; Fisher v. Taylor, 2 Rawle, 33; Holdship v. Patterson, 7 Watts, 547; White v. White, 30 Vt. 338. In Ashhurst v. Given, and Vaux v. Parke, cited *supra*, it was decided that life interests might be granted to be held without being liable to the claims of creditors.

The rule is the same where the settlement is made by one, of his own property, provided the settler is not indebted at the time of the settlement, or makes provision for the payment of all subsisting debts — Johnston v. Zane, 11 Grattan, 552; Markham v. Guerrant, 4 Leigh, 284; Bryan v. Knickerbocker, 1 Barb. Ch. 409.

For an able exposition of the right of a person out of debt to settle his property, reserving a benefit to himself, and to bind his subsequent creditors, the court is referred to the opinion of Mr. Binney, 1 Wallace, Jr., 119, in note. This opinion was received and adopted by Judge Baldwin, in the Circuit Court of the United States, so far as it applied to the case then before the court.

HOLMES, Judge, delivered the opinion of the court.

The case is submitted upon the questions, first, whether, under the terms of the trust deed, Thomas F. Smith took an estate or interest in the land that was vendible under execution; and second, whether the plaintiff is entitled to any relief upon this bill, or can, by any proceeding in equity, reach the profits of the land during the life of Smith.

There is no allegation of fraud, and the validity of the deed is admitted. It is to be taken as a voluntary conveyance in good faith and upon a good consideration. The deed creates a trust; and the trusts declared are of such a nature as to preclude the execution of a use in Smith as the original grantor under the statute—Guest v. Farley, 19 Mo. 147. It is a trust of which the scheme has been completely declared in the outset, and may

be considered so far as an executed trust. It is not executory in any sense that would require the aid of a court of equity to prescribe the mode in which the trusts are to be executed; but the execution of the trusts, as declared, would be enforced in equity. It is an express trust, and there is no room to infer a resulting trust by operation of law for the benefit of Thomas F. Smith.

The first question is, whether the trust declared for his benefit creates an equitable estate in the land that could be levied on and sold under execution. By the statute, "all real estate, whereof the defendant, or any person for his use, was seized in law or equity," is subject to sale under execution; and the term real estate includes "all estate and interest in lands, tenements, and hereditaments"—R. C. 1855, p. 740, §§ 17, 73. The statute contemplates an interest or estate in the land, of which the defendant, or the trustee for his use, is seized in law or equity; and when there is no seizin of such an equitable estate, there is no interest in the land which is liable to execution—Brant v. Robertson, 16 Mo. 149. It was said in Broadwell v. Yantis (10 Mo. 403) that "there must be an interest in land which a court of law can protect or enforce, in order that it may be subject to the lien of a judgment and execution," and that "a mere equity, unaccompanied with possession, is not such an interest." The previous decision of this court would seem to warrant a distinction, in reference to the beneficiary, between a vested equitable estate in possession and a mere ground of equitable relief against the trustee, as a simple right to maintain a suit in equity—Anthony v. Rogers, 17 Mo. 394; Rankin v. Harper, 23 Mo. 579; Dunnica v. Coy, 24 Mo. 167. The case of Broadwell v. Yantis recognized the authority of the case of Bogert v. Perry (1 Johns. Ch. C. 52), which appears to have proceeded upon a distinction of this nature; and it was there said that there must be an equitable title or estate within the purview of the statute of uses, and not a mere equitable interest in the land. It is not very clear what was meant by such an interest, but it may be supposed to mean such an interest only as might furnish a ground for equitable relief against the trustee to enforce the execution of the trust, or "an equitable *chose in action*," as it was said in that case.

A life estate in land, at common law, was evidenced by the tenant being clothed with the possession under the name of livery of seizin, and he became a freeholder. Trusts are cognizable only in equity, and it was for the reason that the collateral obligations of trusts were not known at law as interests in lands that they took the name of equitable estates. A simple trust supposes the legal estate merely to be vested in the trustee, and that the *cestui que trust* is entitled in equity to the rents and profits, and has power to dispose of the lands, and a right to call upon the trustee to execute a conveyance to him — 2 Washb. Real Prop. 166, 220. Under this deed it is plain that Thomas F. Smith had no seizin or possession of the land, no power to dispose of any estate in the land, or to enjoy the occupancy or to collect the rents ; nor could he call upon the trustee to execute any conveyance to himself. His interest, whatever it may have been, does not appear to have had the ordinary incidents of a life estate in land, either at law or in equity. We think it is sufficiently clear that the deed did not vest in him an equitable estate in the land itself, to be enjoyed in possession or otherwise. The levy, sale, and sheriff's deed to the purchaser, under the execution, described the property as " all the right, title, interest, claim, estate, and property, of the said Thomas F. Smith, in and to" the lots mentioned and designated by metes and bounds. We must hold that he had no estate in the land which could pass by that description.

In England, a judgment is made a charge in equity on all lands and equitable interests, and the lien may be enforced by the courts of equity and be made available even by a sale—Adams' Eq. 130, 133. In that way there is less danger of a sacrifice of property in consequence of the difficulty of ascertaining what those interests are ; but if all equitable estates and interests were subject to sale under execution, the seller could seldom know what he was selling, nor the purchaser what he was buying, and valuable property would almost inevitably be sacrificed, or the levy and sale would prove utterly futile. Considerations like these may justify us in confining the meaning of the statute to its clear and express terms.

Many cases from other States have been cited by the defendants' counsel, which may be taken as examples of equitable interests that are not vendible under execution; and some cases also of bounties given by the donors for the maintenance and support of the beneficiary, or of a man and his family, under limitations and restrictions as to the interest conferred that were held to preclude the vesting of any interest or property which could be subjected to the payment of debts even by a judgment creditor's bill — Johnston v. Zane, 11 Grattan, 552; Fisher v. Taylor, 2 Rawle, 33; Holdship v. Patterson, 7 Watts, 547; Brewster v. Striker, 2 Comst. 19; Ashhurst v. Given, 5 Watts & S. 323; Markham v. Guerrant, 4 Leigh, 284. Upon the question whether this interest was subject to levy and sale under execution, they give a strong support to the construction we have given to the statute, but none of them can be regarded as decisive of the point that the interest of Smith, under this deed, was not a vested interest for life in the net product of the rents, issues, and profits arising out of this land, which may be reached by the creditor and applied in equity to the satisfaction of this debt.

This brings us to the second question, whether the plaintiff is entitled to any relief on this bill, or can, by any proceeding in equity, reach this net income during the life of the beneficiary. What interest, then, did he take? By the terms of the deed, during his life the trustee is to control and manage the property, to make loans and receive the rents and profits, to pay all the taxes, charges, insurance, and other expenses, and to pay over to Thomas F. Smith at the end of each quarter, during his life, "the net product of said property," under the restrictions mentioned, with remainders over and a power of appointment as therein expressed. This gave him a vested life estate in this net product, of which the trustee could not deprive him by the exercise of any discretion. He was bound to pay it over to Smith, and it is not given to any other person. So far the case is similar to that of Green v. Spicer (1 Russ. & M. 395). Other cases fully support this construction— Piercy v. Roberts, 1 Milne & K. 4; Hallett v. Thompson, 5 Paige Ch. 583; Dick v. Pitchford, 1 Dev. & Batt. Eq. 480; Bryan v. Knickerbocker, 1 Barb. Ch. 409. As it was said in Brandon v.

Robinson (18 Ves. Jr. 429), it could not be contended that he had no interest until he tendered himself personally to give a receipt, nor that if he refused to give a receipt during his life, and allowed the income to accumulate, it would not be assets for his debts: it would clearly be so—2 Story Eq. Jur. § 974, *a.*

There is no limitation over of this whole interest upon any condition that could determine it, short of the period of his life. The restriction expressed concerns only each quarter's rent as it becomes due, and this is only that if, by any personal act, he shall assign or in any manner attempt to anticipate the income of any quarter, that quarter's income shall go over. The additional clause further shows very clearly that he was to be the owner of this interest in the net product, but not of the income of any quarter until it had accrued; and any attempt to anticipate should prevent him or his assigns from having any interest in the quarter's income so attempted to be anticipated, and in this case it was to go over.

There is no question here of any personal act, or attempt to anticipate, within this restriction. There is no question of any assignment by an act of bankruptcy or an insolvent's schedule. The levy and sale under execution being ineffectual to pass this equitable interest, there is no question of an assignment by the act of the law *in invitum.* The case is really that of a judgment creditor seeking a remedy in equity against this property of the debtor, to subject it to the payment of his debt. The property is of such a nature that it cannot effectually be reached at law; but it is quite a different thing in equity. Here is an attempt of a man, apparently, to tie up his own property under a trust in such manner that himself, as owner, may be enabled to enjoy the income and set his creditors at defiance. This is a thing which the law does not allow. A man cannot own property or money and not own it at the same time. Whatever might be said of the justice or honesty of the thing in point of morals, it is enough that such an arrangement is in contravention of the rules of law and equity. He cannot be permitted to have the beneficial enjoyment of an income of this nature, beyond the reach of his honest debts.

As it was said by Lord Eldon, in a similar case, "he cannot prevent his creditors obtaining any interest in it, though it is his." Nor, when the property is actually given to a man in this manner for life, can the donor take away the incidents of a life estate, nor annex restrictions that shall deprive him of all power of alienation, though he may reduce the interest to an estate short of a life estate by a limitation over—Brandon v. Robinson, 18 Ves. 433; Graves v. Dolphin, 1 Sim. 66; Lear v. Leggitt, 2 Sim. 479; Shee v. Hale, 13 Ves. 404; Piercy v. Roberts, 1 Milne & K. 4 .

An exception may be permitted in favor of a married woman (as to the power of alienation), to the extent that the power is created by a court of equity, in reference to her, a seperate property; but no further — Barton v. Briscoe, Jac. R. 603. It is further to be observed that this was not a bounty coming from another under rigid restrictions for maintenance only, and excluding all ownership of any interest in the fund, but the beneficiary was himself the donor, with no restrictions which can be admitted to exclude a vested ownership for life. In such case, especially, the court will lean in favor of a vested interest.

The cases show that the proper remedy in such case is a bill by the judgment creditor to have the rents and profits, as they accrue, applied in equity to the satisfaction of the debt, as far as they will go, and the powers of the court are ample to make the remedy effectual — Bryan v. Knickerbocker, 1 Barb. Ch. 409; Dick v. Pitchford, 1 Dev. & Batt. Eq. 480; Hallett v. Thompson, 5 Paige Ch. 583. There would probably be no occasion to take the property out of the hands of the trustee; but he might be enjoined from paying over the quarterly rents to Smith, and directed to pay them over for the satisfaction of such decree as might be rendered. The commencement of suit would create an equitable lien on the rents and profits in the hands of the trustee accrued or to become due; and a master might be directed to take an account, or such other proceedings be had as might seem proper, according to the practice in equity—2 Spen. Eq. Jur. 40, 798.

It will be apparent that the plaintiff was not entitled to relief upon this petition. It was not framed with a view to the relief

that might be granted as above indicated. The demurrer was properly sustained.

The judgment will therefore be affirmed. The other judges concur.