(Clark County, Probate Court.)

CHAS. H. HEFF, ADM'R., v. LUCY COX et al.

(1). A judgment in order to become a lien upon the lands of a judgment debtor must not only be a valid judgment, but it must be one that is capable of being collected by execution against such property.

(2). A judgment rendered, during the existence of a guardianship, against an imbecile, idiot or lunatic, and his legal guardian is not a lien upon the lands of such imbecile, etc.

ROCKEL, J.

In 1888 Nathan McDonald was declared an imbecile, and Chas. H. Neff was appointed his guardian. Afterwards, to-wit: at the May term of the common pleas court of this county, in 1891, the defendant S. V. Varner, recovered a judgment against "Nathan McDonald, C. H. Neff guardian of Nathan McDonald and John McDonald."

No execution was then issued, nor was it then sought otherwise to enforce the judgment. In January, 1892, Nathan McDonald died seized of the real estate in the petition described, and within a short time thereafter C. H. Neff filed his final account as guardian in this court, and was discharged.

Some time after this, by consent of all parties in interest, the said C. H. Neff was appointed administrator of said Nathan McDonald, deceased. He then filed his petition in this court to sell the real estate of the decedent to pay debts, etc.

The defendant S. V. Varner, by way of answer and cross-petition, set up his judgment and claimed it to be a lien on the premises in the petition described.

The administrator having sold the premises, now comes into court and asks for an order to distribute the proceeds, and raises the question as to whether the defendant has a lien on the premises or the fund arising therefrom, by virtue of the judgment set up in his answer and cross-petition.

It is argued that at the time this judgment was rendered Nathan McDonald could not himself have sold the property, and therefore it could not be sold for him by way of execution; that being under legal guardianship and having no control over it, no judgment lien could be impressed upon it.

That the defendant should have proceeded against the guardian, and if necessary to secure his debt, compelled him to sell the real estate, either by an order of the common pleas court in the exercise of its chancery powers, or by an order of the probate court in which the guardian received his appointment, as provided by law. A judgment lien is purely the creature of legislative enactment. It has no other existence. To the common law it was unknown. Such a lien does not per se constitute a property right in the land itself, but only gives a right to levy on the same and have it applied to the satisfaction of the judgment. The only

COPYRIGHT, 1898, BY CARL G. JAHN.

right that a judgment creditor has, is to make his lien effectual by sale under execution, to the exclusion of adverse interests acquired subsequent to his judgment.

Being purely a matter of statute, it will be proper to consider our statutory enactments.

Sec. 5374, R. S., provides "lands and tenants, including vested interests therein, and permanent leasehold estates renewable forever, and goods and chattels not exempt by law, shall be subject to the payment of debts, and shall be liable to be taken on execution and sold as hereinafter provided."

This section makes all property subject to execution, except such as is exempt by law, and nowhere within my knowledge is the property of an imbecile as such specifically exempt by law from the payment of his debts.

The next sec. 5575, further provides "such lands and tenements within the county where the judgment is rendered shall be bound for satisfaction thereof from the first day of the term at which judgment is rendered. " * * * "

These sections make no distinction as to the disabilities of persons against whom the judgment is rendered.

They include all persons and all property, except such as is exempt by law.

Of course, no valid execution can issue or lien exist unless the judgment upon which it rests is a valid one. We are therefore brought to the question whether the judgment in the case at bar is a valid one?

Whether a judgment can be rendered against an imbecile or a lunatic under guardianship? Whether the judgment can be attacked in this action, or in this court bound by the action of the court of common pleas?

The supreme court, in Johnson v. Pomeroy, 31 Ohio St., 248, has settled this question, at least as to the validity of such a judgment when rendered at a time when the person is not under legal guardianship, when they say "an insane person may be sued and jurisdiction over his person acquired by the like process as if he were sane. But when it is made to appear to the court that a party to the suit is insane, it is made the duty of the court by statute (S. & C., 385, sec. 7.) to appoint a trustee to prosecute or defend the suit for and on behalf of such insane person. And indeed, before the statute, it was the duty of the court to appoint a guardian ad litem for an insane party. Sturges v. Longworth, 1 Ohio St., 554. And no doubt it is the duty of a plaintiff, who sues an insane person, if he has knowledge of the insanity, to inform the court thereof. But the failure to perform any of these duties does not affect the jurisdiction of the court, but only the regularity of the proceedings. Therefore it is held, that the judgment of a court having jurisdiction of the subject matter of the suit and of the person of such party, notwithstanding such irregularity is not absolutely void."

"On this principle" says Black on Judgments, sec. 205, "it is held by all courts that a judgment against a person who was non compos mentis at the time of its rendition, though joining his legal guardian, is binding and conclusive upon him, is not to be impeached in any collateral action, and stands as a valid adjudication until annulled or reversed in some direct proceeding for that purpose".

I am therefore rather of the opinion that so far as this proceeding is concerned the judgment must be treated as valid and subsisting, yet there might be circumstances under which it might be impeached, even in a collateral action. Spoors v. Coen, 44 Ohio St., 497.

The mere fact however that the judgment is a valid one will not ex necessitate make it a lien on the real estate in question.

"In order", says Black on Judgments, that a judgment should create a lien upon the lands of the debtor, it is first necessary that it should be capable of collection by execution against such property". Could the judgment creditor in the case at bar have collected his judgment by execution against this property? I think not, and this is so for severa reasons.

First, it is laid down as a general rule that only such property as the owner or debtor might sell, can be taken on execution against him, (7 Am. and Eng. Ency. of Law, 127, 130; Herman on Executions 144,175).

By the laws of the state at the time this judgment was rendered the debtor had no control whatever over any of his property.

The control and management of all his estate was vested in his legally appointed guardian.

Second, all his property was in a certain sense then in custodia legis.

When a person becomes so unfortunate as to be unable to care for and manage his own affairs, by the beneficent policy of our law, he becomes the ward of the court, which will transact all his business and care for his property by an agent of its own appointment.

And when the court assumes such jurisdiction over the property of another, such property is in the custody of the law and beyond the reach of any execution.

If the creditor has rights to enforce against such property, he must come into the forum of the court that controls it.

The following strong and apt language portrays vividly the injustice of allowing an execution in cases like the present. "By recognizing the right of such creditor to issue execution on a judgment after inquisition found, and levying such execution not only on the real estate of a lunatic, on which it may be a specific lien before such finding, but on the general personal estate, we produce results so disastrous that no equitable tribunal should permit them to happen unless the necessary con sequences are the result of positive law.

"To declare the whole estate real and personal of a lunatic liable to execution of the first creditor who can obtain judgment against him, is to invoke a race for priority among creditors of one whose sufferings, under the most afflicting of the visitations of God's providence, entitle him to the most kindly consideration of his fellow men.

"It leaves the more humane creditor no alternative between entering the struggle or losing his debt, when the estate of the lunatic is not fully adequate to meet the execution of each successive creditor who brings suit.

"It would multiply litigation, by turning every demand against a lunatic's estate into an action at law; where the doubt and fears of creditors would induce them to make an effort for priority, the costs and expenses of which must of course be borne by the estate of the lunatic, and so far depreciate the fund for his support and that of his afflicted family if any he has. It would render the guardian care of this court over the estates of lunatics almost valueless, and would neutralize the grand elements of equality" Eckstein's Case, 1 Pars. ( Penn. ), 59.

This "grand element of equality" is fully recognized and preserved by sec. 6314 R. S., which provides" if the estate of the idiot, imbecile, or lunatic, is insolvent or will probably be insolvent, the same shall be settled by the guardian in like manner, and like proceedings may be had as are required by law for the settlement of the insolvent estate of a deceased person."

Indeed this section would seem to preclude the idea that there could be any preferences created among creditors of the idiot, imbecile or lunatic, at least after the appointment of his guardian.

And such is the inference to be gathered from the language of the supreme court in Johnson v. Pomeroy, 31 Ohio St., 249, when they say: "The estate of an insane person passes to his guardian, by relation as of the date of the adjudication of insarity, as, in case of a deceased person, it passes to the executor or administrator as of the date of the death.

"So that any lien or preference obtained by a creditor before the inquest, must be respected by the guardian to the same extent that such preference secured in the lifetime of an insolvent debtor must be respected by his representatives."

A judgment is not a lien on land unless there is legal or equitable seizure of the land of the judgment debtor, (Black on Judgments, sec. 420.) And an estate under administration can not be the subject of a lien for the debts of a deceased owner. (Herman on Execution, 97).

The defendant or judgment debtor must have a legal title in order that a judgment may operate as a lien, Baird v. Kirtland, 8 Ohio, 21; Schuler v. Miller, 45 Ohio St., 331.

In McIlvaine v. Smith, 42 Mo., 45, it is said: "There must be an interest in the

land which a court of law can enforce or protect, in order that it may be the subject of the lien of a judgment and execution; but a mere equity, unaccompanied by possession of the land, is not such an interest. When the cestui que trust has no seizure or possession of the land, nor power to dispose of any estate in the land or to enjoy the occupancy, or to collect the rents and profits, nor power to call upon the trustee for conveyance to himself, he has no estate in law or equity which could pass under a sheriff's sale."

"But in this country" says an author before quoted (Black on Judgments, sec. 457) in the absence of a statute changing the rule of the common law, a judgment is not a lien on the interest or estate of the beneficiary in an active trust, nor is there any remedy at law to enforce the payment of a judgment out of such interest or estate. The creditor may indeed obtain relief upon a bill in equity, but the ground of the jurisdiction is not that of a lien or charge arising by virtue of the judgment, but of an equity to enforce satisfaction of the judgment by means of an equitable execution."

I am therefore of the opinion that both by the common law and the provisions of our statutes in relation to guardians of imbeciles, lunatics, etc., that no judgment lien can attach to the lands of such imbecile, etc., after the appointment of a guardian, and that in the case at bar the judgment creditor S. N. Varner, has no lien upon the lands in the petition described.